# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| V. | NO. 07-103 |
| **JAMES G. PERDIGAO** | SECTION "L" |

## ORDER & REASONS

Pending before the Court is Defendant James Perdigao's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). R. Doc. 227. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I. BACKGROUND

On October 31, 2008, James Perdigao appeared before the Court and pleaded guilty to Counts 1, 13, 31-55, 56, and 60-61 of a Second Superseding Indictment charging him with violations of Bank Fraud (18 U.S.C. § 1344), Mail Fraud (18 U.S.C. § 1341), Interstate Transportation of Stolen Funds (18 U.S.C. § 2314), Money Laundering (18 U.S.C. § 1957), Income Tax Evasion (18 U.S.C. § 7201), Filing False Tax Returns (18 U.S.C. § 7206(1)) Obstruction of Justice (18 U.S.C. § 1503(a)), and Unlawful Computer Intrusion (18 U.S.C. §§ 1030(a)(2)(c), (c)(2)(B)(ii)). On March 25, 2009, Perdigao was sentenced to 188 months in the custody of the Bureau of Prisons. R. Doc. 212. This term was comprised of 188 months as to Counts 1, 13, and 56; 120 months as to Counts 31-50 and 60; 36 months as to Count 55; and 60 months as to Counts 51-54 and 61, all to be served concurrently. R. Doc. 212. He was also sentenced a three-year term of supervised release. R. Doc. 212 at 3. A $3,000.00 special assessment fee was imposed and Perdigao was ordered to pay restitution in the amount of $23,517,538.00. R.

Doc. 212 at 5.

## II. PENDING MOTION

On February 29, 2020, Perdigao filed the instant motion for a sentence reduction under the First Step Act of 2018. R. Doc. 227. Perdigao seeks to have the Court grant him compassionate release as he suffers from a serious and debilitating heart condition that hampers his ability to provide self-care while incarcerated. Perdiago takes the position that compassionate release is justified because his medical condition constitutes an "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A)(i). Further, Perdiago contends the § 3553(a) factors weigh in favor of compassionate release because he has served 162 months in prison, which is more than the low end of his guideline range, has been successfully rehabilitated while in prison, and does not pose a threat to any person or to society as a whole if released.

The Government opposes the motion and sought an extension of time to file a response. R. Doc. 233. The Court granted the Government's request and ordered that an opposition be filed by April 21, 2020. R. Doc. 235. However, in light of ongoing developments regarding the outbreak of COVID-19 and particularly the fear that the virus could promptly and critically threaten Perdigao's health and wellbeing while incarcerated, the Court heard from the parties at a telephone status conference on Thursday, April 2, 2020.

## III. LAW

In relevant part, 18 U.S.C. § 3582(c)(1)(A) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors from § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commissions' relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or "serious physical or medical condition" that

"substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13.

Although historically sentence reductions could be ordered only upon a motion by the Director of the Bureau of Prisons, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act, and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the Bureau of Prisons upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. 1B1.13. This discrepancy has been recognized by many courts. *See United States v. Crinel*, No. CR 15-61, 2020 WL 955054, at *2 (E.D. La. Feb. 27, 2020) (citing *United States v. Brown*, 411 F. Supp. 3d 446, 451–52 (S.D. Iowa 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019)).

Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g.*, *Beck*, 2019 WL 2716505, at *5. Accordingly, other district courts have found that they have discretion to determine what constitutes an "extraordinary and compelling reason[]" on a case by case basis, and reliance on the policy statement may be helpful,

3

but not dispositive. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *Cantu*, 2019 WL 248923, at *5 ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief."). Accordingly, the Court will consider whether Perdigao has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to any other person of the community, all in light of the Section 3553(a) factors.

1. *Administrative Remedies*

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582. This requirement is clearly satisfied here. Perdigao first petitioned the warden of FPC Pollock for compassionate release on August 30, 2019, asserting that his heart condition constituted extraordinary and compelling circumstances warranting his release from prison. R. Doc. 227-6 at 6. Receiving no response, Perdigao send an email to the warden on November 26, 2019, offering to provide the warden with his medical records upon receipt. R. Doc. 227-6 at 6. Perdigao sent another email on December 9, 2019, offering to provide letters of support from his friends and family. R. Doc. 227-1 at 6. On December 23, 2019, Perdigao informed the warden via email that he had received a pacemaker but continued to experience atrial fibrillation. On January 17, he emailed the warden, explaining that he had been classified by the Bureau of Prisons as Medical Care Level 3. On January 26, 2020, Perdigao again offered to provide the warden with copies of

his medical records. R. Doc. 227-1 at 7. The warden did not respond to any of Perdigao's communications. Accordingly, on February 1, 2020, Perdigao emailed the warden informing him that he would be seeking relief with the Court. R. Doc. 227-1 at 7.

The warden of Perdigao's detention facility received notice of Perdigao's request for compassionate relief on August 30, 2019. Perdigao waited until February 29, 2020 to file the instant motion with the Court. Accordingly, Perdigao has standing to bring these claims because more than thirty days have elapsed since Perdigao first sought relief from the warden.

*B. Extraordinary and Compelling Reasons*

Although the relevant policy statement has not been amended to reflect legislative changes brought about by the First Step Act, the policy statement remains instructive to the Court's determination of whether extraordinary and compelling reasons warrant a sentence modification. In relevant part, the policy statement provides that an extraordinary condition exists if the defendant suffers from a terminal illness or another "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13 cmt. 1(a).

Perdigao clearly suffers from a serious physical or medical condition. For years he suffered from debilitating bradycardia that caused him to "get dizzy virtually every time he stood up," and "stop and catch his breath when he walked . . . to go to the chow hall, to the telephone room, to the laundry, to work at his prison job, or simply to go to the restroom." R. Doc. 227-6 at 9. Perdigao had a pacemaker installed in December 2019 to resolve his bradycardia, but he developed "a new (or previously hidden) cardiac conduction problem [of] frequent intermittent episodes of atrial fibrillation" shortly thereafter. R. Doc. 227-6 at 9. Atrial fibrillation involves period of dangerously accelerated and irregular heartbeat, causing him to "suffer[] from overarching fatigue, faintness,

5

dizziness, shortness of breath, chest pain, and a sensation of thumping or palpitations in his chest" that affect "virtually all of the activities of daily living in prison." R. Doc. 227-6 at 9. In addition, Perdigao suffers from glaucoma, colitis, and hypertension. R. Doc. 227-6 at 10.

Additionally, these medical problems clearly substantially diminish Perdigao's ability to provide self-care within his correctional facility. His episodes of atrial fibrillation occur randomly and without warning, and Perdigao accordingly fears to leave his cell. R. Doc. 227-6 at 9. With limited mobility, he is unable to perform basic requirements of living in a correctional facility, such as complying with a correctional officer's orders. R. Doc. 227-6 at 9. Although Perdigao has received medical treatment for the fibrillations and his other underlying conditions, the symptoms have not resolved nor is there hope for a successful cure. R. Doc. 227-6 at 9. These are chronic conditions from which it is not expect that Perdigao will recover. Accordingly, the Court finds that Perdigao's medical condition constitutes an extraordinary or compelling circumstance warranting compassionate release.

*C. Safety to Others and Community*

A defendant seeking compassionate release must also demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13. Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by the defendant's release. 18 U.S.C. § 3142(g).

Here, Perdigao pled to a number of serious crimes. Notably, however, none were crimes of violence or offenses involving controlled substances. He does not have a history of criminal activity nor does he have a record of violence while incarcerated. Further, Perdigao has a wide and stable support system and the Court has heard from a number of his friends and family members

6

offering to support him physically, emotionally, and financially if he is released from prison. Additionally, Perdigao has been incarcerated for over 162 months during which time he took advantage of prison programming and taught GED courses in a variety of subjects. R. Doc. 227-6 at 12. Accordingly, the Court finds that Perdigao does not pose a risk to others or to his community if released.

*D. Section 3553(a) Factors*

Lastly, the Court must be satisfied that defendant's release is supported by the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) requires a court to consider the certain factors when imposing a sentence, including the nature and circumstances of the offense and history and characteristics of the defendant, the need for the sentence, and the variety of sentences available.

The Court recognizes the severity of Perdigao's criminal offenses. However, the Court also recognizes that Perdigao has completed over 162 months—over 86%—of his 188-month sentence. He has already served more than the low end of the guideline range suggested for an criminal defendant with similar offense levels and criminal histories. Accordingly, early release would not create sentencing disparities between Perdigao and other defendants with similar records convicted of similar crimes, as § 3553(a) attempts to prevent. *See* 18 U.S.C. § 3553(a)(6). As noted above, the crimes with which he was convicted do not involve crimes of violence or controlled substances, and reports indicate that Perdigao has been a model prisoner while incarcerated.

The Court is also concerned with Perdigao's access to quality medical care while in the custody of the Bureau of Prisons. Section 3553(a)(2)(d) instructs a court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(d). Perdigao, having already completed the majority of his sentence, now faces the prospect of being unable to receive the medical care he desperately needs to treat his serious heart

7

conditions as well as a variety of other medical concerns. The Court finds truth in Perdigao's statement that his "medical records demonstrate an increasing need to seek care from medical professionals outside the BOP." R. Doc. 227-6 at 15. The Court thus concludes that the applicable § 3553(a) factors support Perdigao's request for compassionate release.

IV. CONCLUSION

For the foregoing reasons, the Court finds that Perdigao's medical condition warrants a reduction of his sentence, that Perdigao does not pose a threat to any other person or the community, and that his prompt release is supported by the factors set forth in § 3553(a). Accordingly,

**IT IS ORDERED** that Perdigao's Motion to Reduce Sentence, R. Doc. 227, is **GRANTED**.

**IT IS FURTHER ORDERED** that Perdigao's sentence is **REDUCED** to time-serve.

**IT IS FURTHER ORDERED** that the Bureau of Prisons release Perdigao for placement at his mother's residence in New Orleans, Louisiana. Upon his release, Perdigao will begin to serve the three-year supervised release term imposed upon him at sentencing.

New Orleans, Louisiana this 2nd day of April, 2020.

_____
Eldon E. Fallon
United States District Judge